SUSIE W. RICHARDS vs. EDWIN B. RICHARDS.

Suffolk.   January 17, 18, 1929. — January 27, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Equity Pleading and Practice*, Demurrer, Bill, Appeal, Decree after rescript.   *Evidence*, Of foreign law, Competency, Judicial notice. *Contract*, Validity, Between husband and wife.   *Husband and Wife. Equity Jurisdiction*, Specific performance.   *Conflict of Laws.*

The amendment of § 70 of G. L. c. 233 by St. 1926, c. 168, providing that "courts shall take judicial notice of the law . . . of any state . . . whenever the same shall be material," did not purport to make any change in the rule of law that, when law of another State is relied on in our courts, it is relied upon as a fact, and that, if a party desires to put himself in a position where the effect of the foreign law upon the rights of the parties to litigation may be raised or settled by demurrer to his pleadings, that foreign law must be set forth with adequate particularity in his pleadings.

In a bill in equity based on rights arising under an agreement in writing made in the State of New York between parties then domiciled there, an averment, that the "agreement was and is a valid, existing and binding agreement under the laws of the State of New York," was not of sufficient particularity, when there was a demurrer to the bill, to raise the question, whether the agreement was or was not valid under the laws of the State of New York.

A judge of the Superior Court hearing a demurrer to a bill of the character above described, in which the only averment as to the law of the State of New York was that quoted above, overruled the demurrer but filed a careful analysis of the statutory and case law of New York and reached the conclusion that the agreement set forth in the bill was valid under that law.   On an appeal from the judge's ruling, this court, while holding that the demurrer properly was overruled, *stated* that the judge's careful analysis of the law of New York was not required and was not germane to the issues raised, and that the course of procedure by which that result was reached was not approved.

The suit above described afterwards was heard upon the merits by a second judge of the Superior Court, a stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 29 (1926).   There was nothing in the transcript of the evidence at the trial concerning statutes or decisions of the State of New York, and apparently no such statute or decision was introduced in evidence.   The judge found that "the agreement was and is a valid, existing and binding

agreement under the laws of the State of New York, where it was executed and where both parties lived and were domiciled at the time of its execution." Upon an appeal by the defendant, this court, in view of the state of the record, considered the case as though the attention of the trial judge had been directed to pertinent statutes and court decisions of the State of New York so that the question of the effect of the foreign law properly was presented to him and on appeal properly was before this court.

The validity of an agreement in writing, made in the State of New York between a husband and wife then there domiciled, must be determined by the law of New York.

A husband and wife, domiciled in the State of New York, made there an agreement in writing reciting that they agreed to and did "mutually separate and live apart" and that each of them agreed "that neither of them or either of them will interfere with the rights, privileges, doings or actions of each other and will not interfere, molest, disturb, visit, harass or annoy in any way, manner or shape each other"; and further providing for payments by the husband to the wife. Subsequent to the execution of the agreement and for a considerable time previous thereto there was no cohabitation between the parties. The next day after the execution of the agreement, the husband left the house where they had been living, and six days later the wife left it. The husband afterwards ceased to perform the provisions of the agreement and, as he then had become a resident of this Commonwealth, the wife brought here a suit for specific performance. A decree for the wife was entered and the husband appealed. *Held*, that

(1) Under Consolidated Laws of New York, c. 14, § 51, and certain decisions of the courts of New York which the court treated as though they had been before the trial judge within G. L. c. 233, § 70, as amended by St. 1926, c. 168, the agreement was valid and enforceable;

(2) There was nothing in the agreement so repugnant to the public policy of this Commonwealth as to require our courts to refuse to enforce it;

(3) There was jurisdiction in equity to enforce the agreement;

(4) It being admitted in the defendant's answer that the execution of the agreement was in good faith by the parties and it appearing that the defendant was an intelligent man and read and knew the contents of the instrument before signing it, evidence of circumstances preceding its execution, evidence that the defendant was without counsel, of his understanding of the meaning of the agreement, and of the attitude and conduct of the wife previous to the execution of the agreement, was irrelevant and immaterial, and properly was excluded.

Upon the plaintiff urging that the final decree ought to be modified so as to include payments falling due under the agreement after the date of the entry of the decree from which the defendant appealed, this court by rescript directed that she be given leave to move in the Superior Court to amend her bill in respect to matters occurring since the entry of the

final decree; and that, if such motion was granted, the suit was to stand for further hearing on issues thereby raised; otherwise, decree was to be affirmed with costs.

BILL IN EQUITY, filed in the Superior Court on April 20, 1928, and described in the opinion.

Material provisions of the agreement in writing upon which the suit was based were as follows:

"WHEREAS, divers and unhappy disputes and differences have arisen between the parties, by which they hereby agree to and do mutually separate and live apart, and in consideration of the payment to be made, as hereinafter stated, by the party of the first part to the party of the second part, each of said parties agrees that neither of them or either of them will interfere with the rights, privileges, doings or actions of each other and will not interfere, molest, disturb, visit, harass or annoy in any way, manner or shape each other and,

"WHEREAS, each of the parties hereto are fully aware of all of the facts and circumstances in relation to the property of the other, and the value thereof, and all other matters in relation to the execution of this agreement and release and of all things herein contained,

"Now THEREFORE, in consideration of the conditions and mutual covenants herein contained and the sum of One Dollar, ($1.00) each to the other in hand paid, the receipt whereof is hereby acknowledged, the parties hereto agree as follows: . . . [Paragraphs 1 and 2 related to payments and conveyances by the husband to the wife.]

"3. It shall be lawful for either party hereto to live separate and apart from the other and free from his or her marital control and authority to reside from time to time at such place or places as he or she may desire.

"4. Neither party hereto shall molest or compel or endeavor to compel the other to cohabit or dwell with him or her by legal or other proceedings for the restitution of conjugal rights or otherwise howsoever. . . . [Paragraph 5 related to a payment of an insurance premium.]

"6. It is agreed and understood between the parties that the husband makes this transfer of said property to the wife in lieu of all future support and maintenance of his said wife.

"7. That the wife in consideration of the payments aforesaid and the transfer to her of the property above mentioned in this agreement, agrees to accept the same in lieu of all her future support and maintenance and hereby releases her husband of any and all future support and maintenance. . . ."

A demurrer to the bill, filed by the defendant, was heard by *Bishop,* J., and was overruled. The suit then was heard on the merits by *Donahue,* J., a stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 29 (1926). Material evidence and facts found by him are described in the opinion. By his order a final decree was entered directing "that the defendant forthwith pay to the plaintiff the sum of $925, being the amount of weekly payments due and unpaid under the written agreement between the parties, the sum of $30.10, being the cash value of the insurance policy referred to in the bill, and $146.92, debts contracted by the plaintiff which have not been paid, the total sum being $1102.02, together with costs to the plaintiff to be taxed at $23.75, and that execution issue therefor." The defendant appealed.

*D. Ash* of Maryland, (*G. H. Lucey* with him,) for the defendant.

*F. L. Norton,* for the plaintiff.

RUGG, C.J. This is a suit in equity. It is brought to enforce specific performance of an agreement alleged to have been executed at Albany in the State of New York between the parties, then and now husband and wife, both then there resident, the plaintiff still there residing and the defendant now a resident in this Commonwealth. In brief the agreement, after reciting marital disputes and a compact to live separate and apart, contains stipulations respecting property rights of the spouses and amounts to be contributed by the defendant toward the support of the plaintiff. There are

allegations of performance by the plaintiff of all parts of the agreement to be performed by her and of failure of performance on the part of the defendant, with specification of details, and a further averment that the "agreement was and is a valid, existing and binding agreement under the laws of the State of New York." The defendant demurred on the general ground that a cause for relief in equity was not stated in the bill. When the case was heard on the demurrer, the trial judge overruled the demurrer but filed a careful analysis of the statutory and case law of New York and reached the conclusion that the agreement set forth in the bill was valid under that law. Doubtless this course was followed by the trial judge on the theory that he was required, in passing upon the demurrer, to consider and determine what was the law of New York by virtue of St. 1926, c. 168. That statute provides that "courts shall take judicial notice of the law . . . of any State . . . whenever the same shall be material." That statute does not purport to make any change in the nature of the law of another State as to its evidentiary or legal substance. Such law may be set forth in a single statute or it may be deducible from numerous more or less conflicting decisions. *Lennon* v. *Cohen,* 264 Mass. 414, 420, and cases cited. See First Report of Judicial Council of Massachusetts, pages 36–39. If parties desire to put themselves in a position where the effect of the foreign law upon the rights of the parties is to be raised or settled by demurrer, that foreign law must be set forth with adequate particularity in the pleadings. Without such particularity of allegation in the bill, the defect in the plaintiff's case does not appear on the face of the bill. A demurrer deals only with defects appearing on the face of the bill. If resort must be had to extraneous matters to determine the issue, demurrer is not the appropriate pleading. It has been said that what are the laws of the State of New York "is of course a question of fact in this jurisdiction, and cannot be considered upon demurrer to a bill which contains no allegations as to the New York laws." *Peters* v. *Equitable Life Assurance Society,* 200 Mass. 579, 588. In *Keown* v. *Keown,* 230 Mass. 313,

316, it was held that the law of a sister State should have been set out in the bill as a fact before being susceptible of consideration on demurrer. In *Hanna* v. *Lichtenhein*, 225 N. Y. 579, 582, occurs this: "No court is to be charged with the knowledge of foreign laws; but they are well understood to be facts, which must like other facts, be proved before they can be received in a court of justice . . . . They are admitted by demurrer. . . . Foreign law is a question of fact and must be proved as such." *Liverpool & Great Western Steam Co.* v. *Phenix Ins. Co.* 129 U. S. 397, 445–446. *Nashua Savings Bank* v. *Anglo-American Co.* 189 U. S. 221, 228. Wigmore on Evidence (2d ed.) §§ 2549, 2558.

The present bill contains no specific allegation touching the character, sources, or details of the New York law. The averment already quoted was of the most general nature. There was no motion for further specifications as to this averment. The demurrer was of like general nature. There was enough in the averment to warrant a trial on the facts in the absence of any challenge of the adequacy of the statement as to the foreign law. The trial judge was right in overruling the demurrer; but his careful analysis of the law of New York was not required and was not germane to the issues raised. The order overruling the demurrer will be sustained although the course of procedure by which that result was reached is not approved. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 384. *Reilly* v. *Selectmen of Blackstone*, 266 Mass. 503, 512, and cases cited. *Wong Doo* v. *United States*, 265 U. S. 239, 241.

The defendant filed a demurrer and at the same time, without waiving the demurrer, filed an answer. This has become recognized practice. See *O'Hare* v. *Downing*, 130 Mass. 16, 20; *Eastman Marble Co.* v. *Vermont Marble Co.* 236 Mass. 138, 151.

The case then went to trial on the merits. The trial judge found that the facts set forth in the bill were true in substance; that the agreement was executed in good faith on or about August 29, 1927, at Albany, New York, as the parties were about to separate; that the defendant left the house where the parties had been living together on

August 30, 1927, and the plaintiff left on September 5, 1927; that subsequent to the execution of the agreement and for a considerable time prior thereto there was no cohabitation between the parties, and that as to several matters the defendant had failed to comply with the agreement. There is no finding that the separation was induced by the agreement. He found also that "the agreement was and is a valid, existing and binding agreement under the laws of the State of New York, where it was executed and where both parties lived and were domiciled at the time of its execution." A decree was entered granting money damages in favor of the plaintiff. The defendant appealed.

The case comes before us on appeal by the defendant from the final decree in favor of the plaintiff with what is certified to be a transcript of the evidence at the trial. There is nothing in that transcript concerning statutes or decisions of the State of New York. None seems to have been introduced in evidence. If, however, it be assumed (*Boucher* v. *Hamilton Manuf. Co.* 259 Mass. 259, 267) that the attention of the trial judge was directed to pertinent statutes and decisions by argument or otherwise, and that thus the question of foreign law was presented for his consideration, and that therefore under St. 1926, c. 168, the matter comes before us for review, the same result follows. No error is disclosed.

The validity of the agreement depends upon the law of the place where it was made. *Carmen* v. *Higginson,* 245 Mass. 511, 516. The finding that the agreement was valid under the law of New York was right. The pertinent statute of New York is Laws of 1909, c. 19, constituting c. 14 of the Consolidated Laws, § 51, being the same in substance as Laws of 1896, c. 272, § 21, and is in these words: "A married woman has all the rights in respect to property, real or personal, and the acquisition, use, enjoyment and disposition thereof, and to make contracts in respect thereto with any person, including her husband, . . . and to exercise all powers and enjoy all rights in respect thereto and in respect to her contracts, and be liable on such contracts, as if she were unmarried; but a

husband and wife can not contract to alter or to dissolve the marriage or to relieve the husband from his liability to support his wife." There seems to be no question under the New York law that, where a separation between the husband and wife has already sprung into existence and is not produced or occasioned by the contract, an agreement of this general nature is valid and enforceable. *Pettit* v. *Pettit*, 107 N. Y. 677, 679. *Galusha* v. *Galusha*, 116 N. Y. 635, 642. In *Carson* v. *Murray*, 3 Paige Ch. 483, there was in litigation an agreement between husband and wife through the intervention of a trustee. After unhappy disputes had arisen between the spouses, the agreement was executed to the effect that there be an immediate separation between them and payments be made by the husband to the wife in lieu of all other claims by her. "The separation took effect immediately, and the parties do not appear to have lived or cohabited together as husband and wife afterwards." (Page 502.) After a review of authorities, it was said by Chancellor Walworth: "According to those cases, agreements for separations cannot be supported, either at law or in equity, unless the separation has already taken place, or is to take place immediately upon the execution of the agreement. . . . Testing the agreement in this case by these principles, I cannot see that there is any thing in the contract, as proved, to render it invalid. It appears to have been an agreement for an immediate separation." These words were quoted without criticism and with apparent approval in *Winter* v. *Winter*, 191 N. Y. 462, 472. *Winter* v. *Winter* was a case where the parties had been living apart before the agreement was executed and where the contract was directly between the spouses without the intervention of a trustee. With respect to the latter factor it was held that under the statute any contract for separation and support, which they formerly could have made by means of a trustee they can now make without one and directly with each other. (To the same effect is *Effray* v. *Effray*, 110 App. Div. (N. Y.) 545.) It was remarked also (page 470) that "Agreements like the one considered in *Pettit* v. *Pettit*, and the one now before us, if made

while the parties are still living together, are held void as against public policy where it is an essential part thereof that they should thereafter separate. (*Poillon* v. *Poillon*, 49 App. Div. 341; *Whitney* v. *Whitney*, 4 App. Div. 597; *Maney* v. *Maney*, 119 App. Div. 765.)" These three decisions last cited seem to support the proposition stated. With respect to this passage, however, it was said in *Marks* v. *Marks*, 216 N. Y. Sup. 341, 342: "This observation, which had no part in the determination of the Winter case, appears to be an historical reference, without comment, to a rule laid down in the three Appellate Division cases cited therein or at most mere dictum. It seems in direct conflict with *Clark* v. *Fosdick*, 118 N. Y. 7." In *Clark* v. *Fosdick* there was raised for adjudication the validity of a separation agreement through the intervention of a trustee between a husband and wife, living together but contemplating immediate separation. It was held that the agreement was valid. Numerous cases were reviewed to the effect that such agreements were valid and would be enforced in equity if not made in contemplation of a future possible separation, but in respect to one to occur immediately or one already come to pass. *Walker* v. *Walker*, 9 Wall. 743, 751. The decision in *Clark* v. *Fosdick* was followed in *Fives* v. *Fives*, 203 N. Y. Sup. 585, after a review of authorities, where an agreement between husband and wife made in contemplation of immediate separation, which took place, was upheld. *Fives* v. *Fives* was followed in *Marks* v. *Marks*, 216 N. Y. Sup. 341, where the same conclusion was reached. See also *Reischfield* v. *Reischfield*, 166 N. Y. Sup. 898, 899; *Landes* v. *Landes*, 159 N. Y. Sup. 586, 589. There is nothing at variance with these views in *Tirrell* v. *Tirrell*, 232 N. Y. 224. There seems to be some divergence of views among different departments of the Appellate Division touching the present force of the decision in *Clark* v. *Fosdick*. It was said in 1922 in *Dowie* v. *DeWinter*, 203 App. Div. (N. Y.) 302, at page 304: "It is true that in *Clark* v. *Fosdick* (118 N. Y. 7) . . . it was held that a contract for 'immediate' separation, entered into between husband and wife then living together, was a valid contract, but that decision, while it has not

been expressly repudiated, has clearly been overborne by subsequent decisions." To the same effect in substance is *Matter of Hughes*, 225 App. Div. (N. Y.) 29, 31.

There seems to us to be nothing in *Stewart* v. *Stewart*, 223 N. Y. Sup. 603, to support the view that the courts of New York would hold this agreement to be an attempt on the part of a husband and wife to modify their marital status and to be void for that reason.

Taking judicial notice of the law of New York on this point so far as it has now come to our attention, we are of opinion that no error was committed by the trial judge.

Since the agreement appears to have been valid under the law of the sister State where it was made, there is nothing in it so repugnant to the public policy of this Commonwealth as to require us to refuse to enforce it. This point is covered by the decision in *Polson* v. *Stewart*, 167 Mass. 211. See also *Atwood* v. *Walker*, 179 Mass. 514, 518; *Coe* v. *Hill*, 201 Mass. 15, 22; *Golder* v. *Golder*, 235 Mass. 261, 262; *Terkelson* v. *Peterson*, 216 Mass. 531, 533, 534 and cases there collected.

There is jurisdiction in equity to enforce the agreement. *Woodard* v. *Woodard*, 216 Mass. 1. *White* v. *White*, 233 Mass. 39. There is nothing to the contrary in cases like *Gahm* v. *Gahm*, 243 Mass. 374, 376, and *Ricker* v. *Ricker*, 248 Mass. 549.

Exceptions as to evidence remain to be considered. The defendant by his answer admitted the execution of the agreement in good faith by the parties. The circumstances surrounding its execution were immaterial. So also were the motives which actuated the defendant in signing it. He was an intelligent man and of course read and knew the contents of the instrument before signing it. *Paulink* v. *American Express Co.* 265 Mass. 182, 185. *Wasserman* v. *Cosmopolitan Trust Co.* 252 Mass. 253, 256. *Willett* v. *Herrick*, 258 Mass. 585, 595. The circumstance that he was without the benefit of counsel is of no consequence. The defendant's understanding of the meaning of the contract was immaterial. He was bound by it, there being no finding of fraud. *Wheaton Building & Lumber Co.* v. *Bos-*

*ton*, 204 Mass. 218, 226.   The attitude and conduct of the wife prior to the execution of the agreement were not relevant to any issue open on the pleadings.   It is not necessary to discuss in detail other exceptions to evidence.   There is no merit in any of them.

The plaintiff urges that the final decree ought to be modified so as to include payments falling due under the agreement after the date of the entry of the decree appealed from.   It is proper in certain cases to make the final decree after rescript conform to the facts which have intervened since the decree in the trial court.   *Day* v. *Mills*, 213 Mass. 585, 587.   Whether this is a case of that sort we do not undertake to determine on this record.   The findings hitherto made are to stand.   The plaintiff is given leave to move in the Superior Court to amend her bill in respect to matters occurring since the entry of the final decree.   *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 9.   If such motion is granted, the case is to stand for further hearing on issues thereby raised.   Otherwise, decree is to be affirmed with costs.

*Ordered accordingly.*