## Brown v. Brown

*Joseph C. Mesics,* for plaintiff.
*Pamela A. Weiss,* for defendant.
*G. Griffith Lindsay, III,* for interpleader-petitioner.

GATES, *P.J.,* February 11, 1981—The matter presently before us is on the petition of Beverly Joyce Brown seeking to have the wages of her former husband Marion Lawrence Brown attached for the payment of past due and future alimony and, further, to order him to pay counsel fees, costs and expenses.

Linda M. Brown, the current spouse of Marion Lawrence Brown, filed a petition to interplead which was allowed by us based upon her claim that she has an interest in any wage attachment of her husband's salary arising out of a prior wage attachment order entered in her favor by agreement. A brief factual background may still the muddy waters and help clarify the issues.

Beverly Joyce Brown and Marion Lawrence Brown were married on June 24, 1956. Marion Brown was, and is, an officer in the United States Army. As a result of marital discord, the parties were separated and divorced in Montgomery County, Tennessee, on April 7, 1978. Previously, the Browns entered into a marital settlement agreement which was incorporated into the divorce decree entered by the Tennessee court on April 7, 1978. One of the terms of the marital settlement agreement was that Marion Brown was to pay Beverly Brown alimony in the amount of $325 a month. He complied regularly with the agreement through August of 1979.

Meanwhile, Marion Brown married Linda Brown and is presently still married to her. This marriage occurred December 28, 1978.

Colonel Brown was transferred to the military reservation at Indiantown Gap, Pa., and took up residence with his present wife at 1142 Kochenderfer Road, Lebanon, Pa., in September of 1979. About that time he ceased paying the alimony order in favor of his first wife.

On December 14, 1979 Beverly Brown instituted an equity action seeking the enforcement of the alimony award. We held a hearing on April 10, 1980 and, afterwards, on June 4, 1980, ordered Marion Brown to pay Beverly Brown the sum of $325 a month as well as entered a judgment for arrears in

the amount of $2,925. No exceptions to this decree were filed.

When Marion Brown refused to pay the judgment and alimony decree of this court, his former wife petitioned for a wage attachment. A wage attachment order was issued by us on June 19, 1980. Upon learning from the United States Army that more than 50 percent of respondent's wages were already subject to wage attachment this proceeding was instituted.

We held hearings on November 6 and November 14, 1980. We ordered the record transcribed, lodged and filed and requested counsel to file requests for findings and conclusions thereafter. The record was transcribed and filed on December 9, 1980. Requests for findings and conclusions were filed by petitioner and by the interpleader-petitioner Linda Brown on December 18, 1980.

## FINDINGS OF FACT

1. On April 25, 1980 Marion Brown and his present wife Linda Brown voluntarily went to the office of the domestic relations section of this court and executed a voluntary stipulation for an order of support, including a wage attachment, requesting that the government attach respondent's wages in the amount of $1,242.

2. Without our attention being directed to the then pending equity proceeding, we entered an order to No. 576 of 1980 attaching respondent's wages pursuant to the agreement of April 25, 1980.

3. At the time the parties entered into the agreed order the parties were aware of the pending proceedings of April 10, 1980.

4. Linda Brown knew of the alimony obligation Marion Brown owed his former wife before their marriage on December 28, 1978.

5. Subsequently, it was learned that the amount of the order exceeded the amount available for attachment and, on May 15, 1980, Brown and his present wife appeared and entered an amicable support order in favor of the intervening wife in the amount of $400 per month.

6. The sum of $400 per month is the maximum amount of allowable wage attachment of respondent's monthly salary.

7. Although both respondent Marion Brown and his present wife Linda Brown were represented by separate counsel, they appeared at the domestic relations office on both occasions without counsel and, ostensibly, the orders were obtained without the advice of counsel.

8. The purpose and motive of Marion Brown and his present wife Linda Brown in entering into the voluntary support order and wage attachment agreement was to frustrate the right of Marion Brown's former wife Beverly Brown to the payment of the alimony order entered by the Tennessee court and, ultimately, by us on June 4, 1980.

9. Marion Lawrence Brown currently receives compensation, not subject to Federal or state taxes, nor subject to wage attachment, in the amount of $63 per month for housing allowance, $82.58 per month subsistence allowance and $426.30 basic allowance for quarters. Additionally, he has wages available for attachment in the amount of $998.33 per month.

10. Marion Brown and Linda Brown have studiously attempted to have it appear as though they are separated and living apart when in fact the arrangement is a sham and fraud upon the court.

11. Marion Brown and Linda Brown anticipated an adverse order against Marion Brown and, in an effort to frustrate the collection of the order, peti-

tioned this court for a wage attachment prior to our decree of June 4, 1980.

12. Beverly Joyce Brown has incurred legal expenses in the amount of $2,112.38.

13. Beverly Joyce Brown has incurred expenses in the nature of professional investigative services performed by Kent A. Fox in the amount of $400.

14. Beverly Joyce Brown has incurred miscellaneous epxenses for loss of earnings, transportation to and from Lebanon from Nashville, Tennessee, in the total amount of $361.33.

15. Beverly Joyce Brown has incurred the total amount of $2,874.71 as a direct result of the failure of Marion Brown to comply with his legal obligation as described in our opinion and decree of June 4, 1980.

16. Marion Lawrence Brown has willfully and intentionally disregarded our decree of June 4, 1980.

## DISCUSSION

The Commonwealth of Pennsylvania and other jurisdictions have ruled years ago that equity has jurisdiction to enforce support agreements: Silvestri v. Slatowski, 423 Pa. 498, 224 A. 2d 212 (1966); McAllister v. McAllister, 147 Fla. 647, 3 So. 2d 351 (1941); Richards v. Richards, 270 Mass. 113, 169 N.E. 891 (1930). Furthermore, these decisions have made no distinction between arrearages and future payments due. Specifically, the Superior Court of Pennsylvania has held that equity has jurisdiction and that an order enforcing future payments is proper: Stull v. Stull, 126 Pa. Superior Ct. 255, 191 Atl. 187 (1937); Adams v. Adams, 32 Pa. Superior Ct. 353 (1907). Pertinently, it has been held that, in extending full faith and credit to a decree of another state, a domestic court of equity

may issue its own order which it may enforce: 13 P.L.E., Equity §167 fn. 60.5.[1]

The intervenor, current wife of Marion Brown, argues that a decree of specific performance for a contractual obligation will not support an attachment of the wages of Marion Brown and that an action for specific performance of a separation agreement is not an action or proceeding for support within the meaning of section 8127(a) of the Judicial Code.[2] Intervenor's argument continues that only an action filed pursuant to the Civil Procedural Support Law is an action or proceeding for support within the meaning of section 8127(a) of the Judicial Code. We disagree.

The Judicial Code, §8127, provides: "(a) General Rule.—The wages, salaries and commissions of individuals shall while in the hands of the employer be exempt from any attachment, execution or other process except upon an action or proceeding for support or for board for four weeks or less."

One of the recurring difficulties in interpreting statutes is that the framers are not able to foresee and provide for all possible future situations. Statutes frequently lack absolute clarity and preciseness. Thus, we are uncomfortable with the conclusion that, in the exemption statute, the legislature employed the expression ". . . except upon an action or proceeding for support . . ." and, therefore, an action or proceeding for alimony does not fall within the gamut of the exception. We would prefer to examine the problem of identifying the intention

---

1. The New Pennsylvania Divorce Code, infra. continues this practice by allowing a foreign decree for alimony to be registered and enforced by a court of equity in this Commonwealth as though it was a domiciled decree. See section 506 of the Divorce Code of April 2, 1980, P.L. 63, 23 P.S. §506.

2. 42 Pa.C.S.A. §8127(a).

of the legislature by searching for the broad purposes and policies that probably motivated those who actively favored the statute. We seek an interpretation of a specific statutory provision before us that will best serve the purposes of the statute as a whole. In this pursuit we suggest that the proper inquiry is not what the expression means, but what can it mean and what are the limits of permissible meaning that can be attributed to it.

At the onset of our journey we must recognize that, at the time of the adoption of the exemption provision of the Judicial Code, the Divorce Code of Pennsylvania had not been enacted by the legislature.[3] The Divorce Law of 1929 had made no provision for alimony after divorce from the bonds of matrimony.[4] On the other hand, under the provisions of Chapter 5 of the new Divorce Code of 1980, alimony is authorized after divorce from the bonds of matrimony in a broad range of cases.

Literally, alimony signifies nourishment or sustenance and is an allowance to be made to a wife out of her husband's estate for her support or maintenance upon her showing that she is entitled to it. Within this frame of reference, the terms "support" and "alimony" are synonymous. We allow that, in this Commonwealth, there was no occasion to employ the expression "alimony"[5] since it was not al-

---

3. Act of April 2, 1980, Act No. 1980-26, eff. 90 days thereafter.

4. Except in an action in divorce a mensa et thoro: Act of May 2, 1929, P.L. 1237, sec. 47, as amended, 23 P.S. §47.

5. See footnote 3. Section 47 of the former Divorce Code specifically provides for the enforcement of alimony following a decree a mensa et thoro by attachment, and the Act of May 10, 1921, P.L. 434, sec. 1, 48 P.S. §136, has been interpreted not to exempt alimony wage attachments. See Birl v. Birl, 24 D. & C. 2d 421 (1961).

lowed after a divorce a vinculo matrimonii. Thus, its employment in the exemption statute prior to the new Divorce Code would have been meaningless. But for present purposes, at least during the period of entitlement, support and alimony in Pennsylvania are synonymous.

There are a number of valid reasons for allowing wage attachments to enforce support obligations which likely motivated the legislative enactment. First, financial support is basic to existence. Existence in turn depends not upon an order of support, but upon its payment. Second, the failure of a spouse to pay the support obligation may result in the unsupported spouse becoming a public charge, an event the legislature likely desired to avoid. Third, the amount of the obligation to support is primarily based upon a spouse's earnings and its distribution at the source is logical, accountingwise. Fourth, an obligation to support is a duty not cheerfully performed and a wage attachment relieves the spouse of the drudgery and discourages attempts to neglect or avoid its performance. Fifth, collection and remittance costs are reduced. Sixth, support is payed as regularly as it is earned.

We allow that the foregoing list is not exhaustive, but it does demonstrate an implied legislative intent to treat a support obligation more vigorously than an ordinary debt. Having concluded that reasons applicable to support obligations are unique when compared to ordinary debts, the purpose of the attachment exemption exception comes into focus more clearly. As we have concluded that support and alimony are synonymous, it follows that an alimony obligation can be enforced by wage attachment by virtue of the exception to the exemp-

tion provision of secton 8127 of the Judicial Code, supra.[6]

Nonetheless, the intervenor Linda Brown would have us distinguish our decree of June 4, 1980 from an alimony order by characterizing it as an order of specific performance of a "contractual obligation." The basis for this argument is that Beverly Brown and Marion Brown entered into a marital separation agreement, including an amount for alimony, which in turn was incorporated into the Tennessee divorce decree. We find no merit to this argument. Beverly Brown was seeking both a divorce and alimony in the divorce proceeding and, had the parties not entered into an agreement as to the amount of alimony, it would have been fixed by the Tennessee court. We fail to see how an order by agreement in this regard differs from an order entered following an adversary proceeding. It certainly does not change its stripes from an alimony obligation to a mere contractual obligation as intervenor would have us believe.

We understand that a relatively few jurisdictions consider alimony as a distribution of marital property and, yet fewer jurisdictions regard it as a penalty to a spouse for the wrong done to the other spouse. However, this concept was not the law in

---

6. Our interpretation of the legislative inclination to include wage attachments for the enforcement of alimony awards is buttressed by an examination of Chapter 5 of the new Pennsylvania Divorce Code. In section 501(f) it is specifically provided that an agreement for the payment of alimony is deemed a part of the order of the court and may be enforced as provided in section 503 of the Divorce Code. In turn, section 503(3) specifically allows enforcement by way of wage attachment so long as the amount does not exceed 50 percent of the wages of the party.

Tennessee. See McClung v. McClung, 29 Tenn. App. 580, 198 S.W. 2d 820 (1946).

The intervenor Linda Brown further argues that, even if a wage attachment were to be issued in favor of Beverly Brown, it would not be entitled to priority over the agreed order and wage attachment in her favor. Again we must disagree.

We have specifically found that the intervenor and defendant were guilty of fraudulent misconduct by feigning separation and by voluntarily entering into a support agreement and obtaining a wage attachment. Linda Brown knew at the time she married Marion Brown that he was under alimony obligation to plaintiff. She was aware that her husband was not complying with the decree and that the matter of enforcement was before this court in an equity proceeding. Subsequent to the hearing, but before an order was entered by us, they voluntarily set up a road block to the court's powers to enforce the Tennessee alimony decree. In a real sense their conduct is analogous to a fraudulent conveyance of property to avoid his prior wife's claim for alimony. That a court of equity is empowered to set aside such fraudulent conveyances needs no recitation of legal authority. It is well established.

Conceding, without agreeing, that Marion Brown now owes a duty to support his second wife Linda, we would nonetheless arrive at the same result. It has long been understood in law and in equity that "prior in time is prior in right." A New York court specifically has held that a first divorced wife, to whom alimony had been awarded, had a superior right to a second divorced wife, to whom alimony had also been awarded. This was held notwithstanding the fact that the second wife promptly procured an order directing attachment of her husband's property, whereas the first wife waited some

two years after default before taking similar action. See Dickinson v. Dickinson, 271 N.Y. 158, 2 N.E. 2d 524 (1936).

One final matter deserves some attention. Beverly Brown has incurred extensive legal fees, investigative expenses and travel expenses in her pursuit to enforce her right to alimony. The general rule, not only in Pennsylvania, but elsewhere, is that a wife may be allowed a sum of money to defray the expenses of a lawsuit as well as counsel fees in order for her to protect her rights: Evans v. Evans, 60 D. & C. 256 (1947); McClenen v. McClenen, 36 D. & C. 270 (1939); Keeley v. Keeley, 9 D. & C. 406 (1926); see also 27A C.J.S., Divorce §216 et seq. Under the circumstances of this case, equity and simple fairness dictate that we allow Beverly Brown these expenses.

## ORDER

And now, February 11, 1981, the prothonotary is directed to vacate our order of April 25, 1980 filed to No. 576 of 1980, wherein Linda M. Brown is plaintiff and Marion L. Brown is defendant, attaching the wages of the said Marion L. Brown. It is further ordered that a wage attachment be issued in favor of Beverly Joyce Brown and against Marion Lawrence Brown in the amount of $325 per month and in addition thereto the sum of $75 per month on account of arrearages in the amount of $2,925 until they are fully paid. It is also ordered that the prothonotary enter judgment in favor of Beverly Joyce Brown and against Marion L. Brown in the amount of $2,874.71 for counsel fees and expenses.