THE WINNISIMMET COMPANY *vs.* THE ASSESSORS OF THE TOWN OF CHELSEA. CHARLES S. CARY & others *vs.* SAME.

The provision of the Rev. Sts. *c.* 7, § 40, requiring the owner of taxable property to carry in a list of his estate to the assessors, in order to entitle him to an abatement of taxes, is not complied with, by an exhibition to the assessors of a plan of his real estate, or by referring them, orally, to a former list carried in by him two years before; nor is the fact, that the assessors are satisfied without a list equivalent to the bringing in of one.

It is no good cause for not carrying in a list, as required by the Rev. Sts. *c.* 7, § 40, that the party assessed is a corporation; or that the estate taxed is owned in part by non-resident proprietors; or that the assessors, being otherwise satisfied, have waived (which they have no power to do) the bringing in of a list.

If an omission by assessors, to give notice to the inhabitants to bring in lists of their estates, will excuse the tax-payers from bringing them in, (which the court did not decide,) the burden of proving such want of notice is on the tax-payer, under the Rev. Sts. c. 7, § 40.

Whether a complaint for an abatement of taxes, in the court of common pleas for the county of Suffolk, can be brought into this court by exceptions — *quære.*

THESE were complaints under the Rev. Sts. *c.* 7, § 39, for abatement of the complainants' taxes for the year 1848, preferred to the court of common pleas in this county, exercising therein the powers of county commissioners in other counties, under the Rev. Sts. *c.* 24, § 57. The cases were heard together by consent, before *Wells,* C. J., who made an order thereon, abating the taxes in question, to which order, and other orders and directions of the judge preliminary thereto, the respondents excepted.

In this court, two principal questions only, of several presented by the bill of exceptions, were considered, namely: —
1st. Whether the complainants had carried in a list of their estates to the assessors so as to entitle themselves to an abatement; or, 2d. Whether they had shown any good cause for not having carried in such list.

The facts, upon which these questions arose, were in evidence substantially as follows: —

John Fenno, land agent of the Winnisimmet company, a corporation duly established by law in this commonwealth, testified, that he had been the agent of the company for fourteen years; that before the 1st of May, 1848, as he thought, or before the

assessment was made for that year, and in season for the purposes of the assessors, he gave them a plan of the lands of the company, marked in such a manner as to designate what lots had been sold and what remained unsold, and also a plan of the Furber marsh, then lately come into the possession of the company, and of which no part had been sold; that it had been the usual practice, for the last eight or ten years, to furnish the assessors with a plan, and they generally asked to have such plan handed in to them in season; and that he gave the plans to Breck, the clerk of the assessors, at their office.

In regard to the Cary estate, it did not appear, that any other statement was made to the assessors, than as set forth in the testimony of two of the board, as follows : — George W. Gerrish, one of the assessors, stated, that some time in the latter part of May, 1848, when the assessors were going round for the purpose of taking the valuation, they called on the complainant Cary, who resided on the place; that Cary gave in the farm at three hundred and fifty acres, and, in answer to an inquiry put to him, stated how much of it was marsh; that the assessors asked him some questions as to the personal property and the stock, which he answered to their satisfaction, and that the information which they received was all which they required for the purpose of taxing the estate. Joseph Breck, clerk of the assessors, testified, that he had been an assessor for five years; that about the middle of May, 1848, the assessors went to the Cary estate; that Cary told them the number of persons in his house; that the witness asked him if the personal estate was the same as last year, to which he answered that it was; that the witness did not ask any questions about the farm, being very familiar with it; that Cary made a reference to his former written statement, handed in one or two years before, and said it was the same now; and that the complainant Cary, and two of his sisters, lived on the farm, the other complainants not being inhabitants of Chelsea.

It did not appear that the assessors had given any notice to the inhabitants to bring in their lists, nor did it appear, that they had not given such notice.

On this evidence, the respondents contended, in the court below, that the complainants had not made such statements of their taxable property to the assessors, as were required by law to entitle them to abatement, or shown any sufficient excuse for not having done so; but the presiding judge overruled the objections, whereupon the respondents excepted.

*J. J. Clarke* and *P. W. Chandler,* for the respondents.

*J. L. English* and *C. G. Ripley,* for the complainants.

METCALF, J.   These are complaints to the court of common pleas, alleging that the assessors of Chelsea wrongfully refused to abate the complainants' taxes for the year 1848. That court, sitting in this county, has the same appellate power in this matter, by Rev. Sts. *c.* 24, § 57, (reënacting the *St.* of 1835, *c.* 118,) which is conferred on county commissioners, in other counties, by the Rev. Sts. *c.* 7.   By § 39, of that chapter, it is provided, that "if the assessors shall refuse to make an abatement to any person, he may make complaint thereof to the county commissioners, and if, upon the hearing of such complaint, it shall appear that the complainant is over-rated, the said commissioners shall make such an abatement of his taxes, as they shall deem reasonable."   The fortieth section provides, that "no person shall have any abatement made, by the commissioners, unless he shall have brought in a list of his estate to the assessors, or shall show good cause for not having so done, and unless he shall, if required by the assessors, have made oath to the truth of the same."

These cases come before this court upon exceptions, taken by the respondents, to the rulings and decisions of the court of common pleas upon various points there made and discussed.

The first question raised by the exceptions is, whether the complainants have entitled themselves to make complaint to the court of common pleas for an abatement; in other words, whether the complainants have shown that they carried in, to the assessors, a list of their estates, or have shown good cause for not having done so.

The law is thus: By Rev. Sts. *c.* 7, § 19, "before proceeding to make any assessment, the assessors shall give seasonabl*

notice thereof, to the inhabitants of their respective towns, at any of their meetings, or by posting up in their towns one or more notifications, in some public place or places, or by some other sufficient manner; and such notice shall require the inhabitants to bring in to the assessors, within a. time therein specified, true lists of all their polls and estates, both real and personal, not exempted from taxation." By § 20, "the assessors may, in all cases, require any person bringing in such a list, to make oath, that the same is true." And by § 22, " the assessors shall receive, as the true valuation of the property of each individual, the list, if any, brought in by him, unless he shall, on being thereto required by the assessors, refuse to make oath that the same is true." By the construction given to this last section, in *Inhabitants of Newburyport* v. *County Commissioners*, 12 Met. 211, the value of the estate, as estimated by the owner, in the list brought in by him, is not conclusive on the assessors; but the property set down in the list is to be taken as conclusive on the assessors, unless the owner, on being required to make oath to it, refuses so to do. That is, assessors cannot lawfully tax a person for any more property than he inserts in his list, unless he refuses to swear that he has no more.

1. Did the complainants carry in a list of their estates to the assessors, or do what was equivalent? The evidence on this point is this: [Here the judge recited the testimony, as stated *ante*, pages 477, 478.]

As to the Winnisimmet company, it is very clear that the exhibition to the assessors of a plan of their real estate was not the carrying in of a list. And it is equally clear, in the case of the Carys, that a reference, by oral communication, to a former list, carried in two years before, was not carrying in a list. Nor is the fact, that the assessors were satisfied without a list, equivalent to a list brought in to them. Their being satisfied or dissatisfied with the parties' omission to bring in a list has no effect on the parties' legal rights under the statute, which makes no exception, but explicitly declares, that no party shall have an abatement made by commissioners, unless he shall have brought in a list, and sworn to it, if required by the assessors. The assesssors could not have called

on the agent of the Winnisimmet company to swear to the plan of their lands. Nor could they have called on the Carys to swear that the oral statement made by them, as to the former list, was true. It was a list brought in for 1848, and that only, which the assessors had any power or right to require the complainants to verify by oath. And a list, which the assessors may lawfully require the party to make oath to, is the only list which will entitle the party to an abatement, on appeal from the assessors.

It is to be noticed, that there is nothing in the statute which prevents assessors from abating a tax, if an abatement is seasonably asked for, although no list has been carried in. But, after they have refused to make an abatement, the provision is peremptory, that it shall not be made by the county commissioners, (the court of common pleas, in the present cases,) unless a list has been carried in, and sworn to, if required. If a party intends to enter upon a litigation, he must prepare himself by taking the prerequisite measures prescribed by the statute.

2. Have the complainants shown good cause for not bringing in a list, and so entitled themselves to appeal from the assessors?

By the provincial statutes, so far as we have examined, a party, aggrieved at the sum apportioned on him by assessors, and being refused an abatement by them, might appeal to the sessions for an abatement, in all cases, as a matter of right. See *Sts.* 4 Wm. & M. *c.* 12; 4 Anne, *c.* 1; 15 Geo. 2, *c.* 2. But it was provided by *St.* 1785, *c.* 50, § 10, that such appeal should not be allowed, unless the party had carried in to the assessors a list of his estate, or should make it appear that it was not within his power so to do. Upon revising this last provision, the words *show good cause* were substituted; as above-cited from Rev. Sts. *c.* 7, § 40. The question, what is good cause, is a question of law, upon facts proved or agreed; and in deciding it, the spirit and policy of the system of apportioning taxes, as shown by *c.* 7 of the revised statutes, in connection with the preëxisting law, are to be taken into consideration. And we are of opinion, after such consideration,

that no such cause is shown by these complainants. Several matters were relied on by them, at the argument, as good causes for not carrying in their lists.

In the first place, it was said that the Winnisimmet company are a corporation, and not an inhabitant of Chelsea, and that three only of the eleven complainants, in the other case, are inhabitants of that town ; that assessors are directed to give notice to inhabitants only, to bring in lists ; and therefore that the complainants were not required to carry them in.

This objection cannot apply to the second of these cases ; because three of the complainants were inhabitants of Chelsea, to whom the law requires notice to be given ; and notice to them would be sufficient notice to the other eight joint owners of the property taxed. And as to the Winnisimmet company, we are of opinion that the objection has no force. It would apply as well to all non-residents who are sole owners of property in Chelsea, as to this corporation ; and if the objection were allowed, all such non-residents, and all corporations, would have a right to appeal from the assessors to the county commissioners, in all cases, for an abatement of their taxes. But there is no such exception in the statute. The provision is, (not that no person who has had notice from the assessors to bring in a list, but that) " no person shall have any abatement made by the commissioners, unless he shall have brought in a list."

It may be remarked here — though the fact does not influence our present judgment — that in England, under *St.* 22 Hen. 8, *c.* 5, concerning the repair of bridges, and *St.* 43 Eliz. *c.* 2, concerning poor rates, corporations are liable to taxation, as inhabitants. 2 Inst. 703, and Cowp. 79.

It was also argued, that the Winnisimmet company, being a corporation, are not within the statute, which speaks only of persons who have not brought in lists. But, by Rev. Sts. *c.* 2, § 6, it is declared, that in the construction of all statutes, the word " person " may extend and be applied to bodies politic and corporate, as well as to individuals. This is a conclusive answer to the argument, otherwise all corporations would be exempt from taxation of their real estate. And as to personal

estate, there is only one section of *c.* 7 of the revised statutes in which corporations are mentioned; to wit, § 10, which provides, that " all machinery employed in any branch of manufacture, and belonging to any manufacturing corporation, shall be assessed to such corporation." By § 7, all taxes on real estate are to be assessed to " the person, who shall be either the owner or in possession thereof, on the first day of May." But, by § 9, personal estate is to be assessed to " the owner;" which term would include corporations. Besides, persons only are entitled to an abatement, and to an appeal from the assessors, and to have reimbursement when an abatement is made after they have paid their tax. Rev. Sts. *c.* 7, §§ 37 – 43. If the Winnisimmet company are not a person, within the provisions of the law concerning the assessment of taxes, they are not a person, within the provisions concerning the abatement of taxes.

It was further argued for the complainants, that the assessors nad waived a list, and that this showed good cause for not carrying it in to them. But the assessors have no power to make such a waiver. It is not for their sakes only that lists are to be given to them. The town have rights and liabilities under the law. And so has every tax-payer. No money collected on a tax warrant, and paid into the town treasury, can be reclaimed and taken back, except by a process authorized by law. And in case of abatement of a tax, as before stated, the money can be reclaimed only when the party, who has paid it, has carried in a list of his estate to the assessors, and sworn to its correctness, if required by them, or can show good cause for not having carried it in. Nor can a tax, which has not been paid, be abated by the county commissioners, upon any other terms. So that the waiver, contended for in these cases, is a waiver of the law, which no party can make, except where his own rights only are concerned.

It was, in the last place, contended for the complainants, that if none of their other objections to the taxes in question should prevail, yet as it did not appear that the assessors, in 1848, gave notice to the inhabitants to bring in lists, these parties had good cause for not carrying them in. The excep-

tions merely state, that "it did not appear that the assessors had given notice to the inhabitants to bring in their lists, nor did it appear that they had not given notice." Whether the assessors' omission to give such notice would excuse the tax-payers for not carrying in their lists, is a question which we need not now decide. If such omission would be a "good cause," it is a cause which the law requires the complainants to "show." And certainly they do not show it by the absence of all evidence concerning the fact.

The result to which the court have come, on the foregoing questions, makes it unnecessary to decide or discuss the other questions raised in these cases. And we express no opinion upon another question, which was not raised by the complainants, namely, whether these cases are rightly brought into this court upon exceptions.

The complainants, having failed to show their right to appeal from the assessors to the court of common pleas, can take nothing by their complaints.