# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

---

Roy H. Charlton *vs.* Library Bureau.

Charles A. Powers *vs.* Same.

Alfred W. Jones *vs.* Same.

Suffolk.   March 14, 15, 1927. — May 21, 1927.

Present: Rugg, C.J., Braley, Pierce, Carroll, & Wait, JJ.

*Contract*, Construction, As to accounting.   *Arbitrament and Award.*

An employee of a corporation made with it a contract in writing for the purchase of shares of its capital stock, he each year to pay six per cent of the purchase price and the corporation to pay him extra compensation, to be applied on such purchase price, at the rate of not less than six per cent of the purchase price, computed by the use of a percentage ascertained as follows: "At the end of each calendar year Public Accountants selected by the Directors of the Company shall certify the percentage which the current earnings of such years, less . . . [certain deductions for dividends] bears to the amount of the total outstanding Common Stock of the Company, including for this purpose the stock subscribed for pursuant to this agreement and all other similar agreements outstanding at the date of such certificate."   In a suit in equity against the corporation for specific performance of the contract and for an accounting, the employee contended that the accounts improperly included among corporate expenses a certain sum as a managerial charge.   It was admitted that the accountants acted in good faith. *Held*, that both parties were bound by the certificate of the accountants determining the plaintiff's compensation, and that inquiry into the methods of their computation was concluded.

THREE BILLS IN EQUITY, filed in the Superior Court on July 19 and 20, 1926, for specific performance of contracts described in the opinion and for an accounting thereunder.

In the Superior Court, the suits were heard together by *McLaughlin*, J., upon an agreed statement of facts. Material facts and rulings by the judge and the terms of a report by him to this court are stated in the opinion.

*E. A. Whitman*, (*L. Weyburn* with him,) for the plaintiffs Charlton and Powers.

*J. P. Wright*, for the plaintiff Jones.

*L. Powers*, for the defendant.

PIERCE, J. These suits for specific performance of similar contracts, under which each plaintiff was entitled to purchase capital stock of the defendant on certain terms and in accordance with specified conditions, were submitted to a judge of the Superior Court on an agreed statement of facts with the request that he make certain specific rulings of law. After consideration of the agreed facts and the arguments of counsel, the judge in each suit, answering the second question and deeming it "unnecessary to pass upon the others," ruled, "I am of opinion that both parties are bound by the certificate of the accountants determining the plaintiff's compensation, and that inquiry into the methods of their computation is concluded"; and being of the opinion that the correctness of his ruling "is a proper subject for consideration of the full court," he reported "the three cases for the consideration of the full court upon the pleadings, the agreed statement of facts and . . . [his] rulings." Upon the filing of the decision the parties agreed that if the judge was correct in his rulings "a decree shall be entered ordering the defendant to pay within thirty days to the plaintiff Charlton the sum of $7,460.17, to the plaintiff Powers $5,765.01, and to the plaintiff Jones $7,255.45, with costs to the defendant in each case"; and if the judge was wrong, the cases were to be remanded to the Superior Court for further proceedings.

The sums specified in the report are the amounts previously determined to be due the plaintiffs under the agreements, with the extra compensation computed by the use of

the percentages certified by the public accountants under the agreement hereinafter referred to.

By subscription contracts, in all respects alike save the name of the subscriber, dated February 9, 1922, each plaintiff became entitled to purchase seventy-five shares of common stock of the defendant corporation at $100 a share to be paid for as follows: the plaintiffs were to pay the defendant in cash annually six per cent of the subscription price; the defendant was to contribute annually not less than six per cent of the subscription price, to be paid out of an extra compensation, "as long as . . . [the subscriber] shall be in the active employ of the Company, to be determined as follows: At the end of each calendar year Public Accountants selected by the Directors of the Company shall certify the percentage which the current earnings of such years, less the eight per cent (8%) dividends upon the Preferred Stock and dividends of not over six per cent (6%) upon the Common Stock, bears to the amount of the total outstanding Common Stock of the Company, including for this purpose the stock subscribed for pursuant to this agreement and all other similar agreements outstanding at the date of such certificate. The sum obtained by multiplying the total amount of the above subscription by two-thirds of such percentage shall then be credited by the Company to the Subscriber as extra compensation for his services during the preceding calendar year, and paid to him in cash, and said cash shall be by him applied upon the purchase price of the shares subscribed for, and said extra compensation so paid each year the Company agrees shall in no event be less than six per cent (6%) of the amount of said subscription. . . . In the event of a cancellation of this agreement in any manner above provided or in the event of a termination of the Subscriber's employment by the Company from death or any other reason, the Subscriber's account shall be credited with only such pro rata proportion of the extra compensation payment for the calendar year in which such cancellation or termination shall occur as shall be certified by the Public Accountants of the Company to in their judgment properly represent the period

from the first of the calendar year to the date of such cancellation or termination of employment, and thereafter all credits for extra compensation shall cease. . . . The object of this contract being to cement the relations between the Company and the Subscriber, the rights of the Subscriber hereunder are strictly personal and shall not, *prior* to the delivery of the stock subscribed for, be sold, pledged, assigned, transferred or otherwise disposed of by the Subscriber, his successors or administrators at any time or in any manner without the consent of the Board of Directors of the Company first had and obtained."

It is agreed that separate accounts were kept by the defendant and each of its subsidiaries of their respective profits and losses; that a consolidated Federal return of income was prepared annually by the accountants Cooley and Marvin, who were elected auditors of the defendant in 1922, with schedules showing the respective profits and losses of the defendant and each of its subsidiaries; that Cooley and Marvin were specially selected by the directors to act under the provisions of the stock participation and extra compensation agreements annually in 1922 to 1925, inclusive; that at the end of each calendar year, beginning with 1922, Cooley and Marvin filed with the board of directors a certificate, exactly in the same form in each year, certifying the bonus percentage and the total amount of the extra compensation for that year; that a notice was sent to each subscriber as to the amount of his credit, which was figured according to the accountants' calculation, and none of the plaintiffs ever inquired as to the method of calculation, nor did the directors until late in May, 1926. It was further agreed that the assistant treasurer of the defendant knew the method used by the accountants in making their calculation for the bonus percentage and extra compensation; that the treasurer did not inform the directors or subscribers of the method used; that neither the board of directors nor the plaintiffs knew how the calculation was made by the auditors, until in May, 1926, the plaintiffs having previously resigned their positions, the directors learned that the accountants had deducted $121,455 as a

management charge in determining the net profit, whereas, the directors contended, the amount deducted should have been the full amount of the management contract. It is agreed that Cooley and Marvin acted in entire good faith in making the bonus calculation in the manner in which it was made. In the Federal income tax return of the defendant and subsidiary companies for 1925, which was prepared by "Cooley & Marvin," under "Schedule A 22, Other Deductions," there is an item for Library Bureau of New Jersey management expense, $121,455, which appeared on the books of the defendant, but the full amount called for under the management contract was not on the books.

The management contract above referred to arose in this wise. In November, 1925, the Rand Kardex Bureau, Inc., a corporation, acquired a part and later the whole of the common stock of the defendant. On November 2, 1925, seven of the nine directors of the defendant corporation resigned and seven new directors, a majority of whom were directors of the Rand Kardex Bureau, Inc., were elected in their place. At the same meeting a vote was passed authorizing the making of a management contract by the new president, Rand, with a properly authorized officer of the Rand Kardex Bureau, Inc. ". . . in accordance with this vote a contract was subsequently signed as of November 2, 1925, by which the Rand Kardex Bureau, Inc. agreed to serve the defendant as manager of its entire business, devoting its advice, experience and expert engineering and executive services to such services and further agreed to pay the salaries of the officers and engineers of the defendant from November 1, 1925, in consideration of which the defendant was to pay fifteen per cent of its net sales from and after October 1, 1925. The contract was to run for one year from October 1, 1925, and thereafter unless terminated by mutual consent. In December 1925, and January 1926, there was correspondence between Messrs. Knapp and Cobb, . . . , which resulted in Rand Kardex Bureau, Inc. billing the defendant on December 31, 1925, for $121,455, 'on account for management services rendered by Rand Kardex Bureau, Inc. for quarter ended December 31, 1925.'

This bill was initialed by C. H. Cobb and paid by the defendant."

The question submitted to the judge and answered by him as a matter of law is as follows: "Was the certification of the accountants, Cooley and Marvin, of the amount of extra compensation so far binding on the plaintiffs or defendant, or either of them, that an inquiry into the methods of the computation by them is concluded: (a) As a matter of law; (b) As an inference of fact?"

The plaintiffs contend that the sole duty of the accountants was to do a sum in arithmetic in determining a percentage; that what constituted "current earnings" was and is a question of law for the court and not a matter for final determination by the accountants; and that the plaintiffs were entitled to show errors in the accounts of the defendant from which the computation of the plaintiffs' compensation was made by the accountants and embodied in their certification.

On the other hand the defendant contends that no right to a bonus, except for the minimum bonus, accrued to the subscriber, nor did any obligation on the part of the company to pay a bonus arise until the public accountants had certified to the directors the bonus percentage for the preceding calendar year as provided in the contract, and the percentage so certified determined the amount of the bonus and was the only method by which it could be determined; that the agreement does not create in the subscriber any right to a share in the earnings of the company, but gives him only the right to a sum determined by the application of a percentage certified by the public accountants to the amount of his subscription. The defendant further directs attention to the fact that the agreement does not define either the method or manner in which the public accountants shall proceed in arriving at the bonus percentage, nor does it mention what items are to be included or deducted in arriving at "current earnings."

We agree with the contention of the defendant that the parties left to the public accountants the determination of the bonus percentage; that the parties elected to take their

judgment and be bound by their decision as to this fact; and even if the public accountants had been mistaken in their conclusion or wrong in their judgment, their finding cannot be impeached because admittedly they acted in good faith.   For somewhat analogous situations see *Clark* v. *New England Telephone & Telegraph Co.* 229 Mass. 1, 7; *Hurley* v. *Boston,* 244 Mass. 466, and cases cited at page 470.

The ruling of the judge was right.   It results that a decree is to be entered ordering the defendant to pay within thirty days to the plaintiff Charlton the sum of $7,460.17, to the plaintiff Powers $5,765.01, and to the plaintiff Jones $7,255.45, with costs to the defendant in each case.

*Ordered accordingly.*