J. F. FITZGERALD CONSTRUCTION COMPANY *vs.* SOUTHBRIDGE WATER SUPPLY COMPANY.

Suffolk.　May 4, 1939. — October 24, 1939.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Contract*, Construction, For arbitration, Building contract. *Arbitrament and Award.*

The provisions of an article of a construction contract specifically constituting as subjects of arbitration matters named in another designated article as not subject to final determination by the engineer, including claims involving "financial considerations . . . if no agreement in regard thereto is reached," did not authorize nor require

arbitration as to a claim by the contractor, disallowed by the engineer, for an increase of compensation due to the fact that material to be excavated was more difficult than he had been led to expect, where a different article authorized the engineer with the approval of the owner "to make . . . adjustment of" compensation but did not specify that its subject matter should be arbitrated.

The fact that one claim considered in arbitration under a construction contract was not subject to arbitration under the contract's provisions required that the entire award be set aside where it was in a lump sum and the arbitrators refused to specify what items were included therein.

PETITION, filed in the Superior Court on December 2, 1938, under G. L. (Ter. Ed.) c. 251, § 19, for confirmation of an award of arbitrators purported to have been made under § 14 in the sum of $18,575 and interest.

Judgment was ordered by *O'Connell*, J., confirming the award.

*R. Wait*, (*P. H. Rhinelander* with him,) for the respondent.

*D. Greer*, (*E. F. Dalton* with him,) for the petitioner.

RONAN, J. By contract dated December 14, 1936, the petitioner agreed to construct an earth dam and a reservoir, and to lay a pipe line for the respondent as an addition to its plant and equipment in the conduct of its business as a water company. The compensation to be paid the petitioner was set forth in a schedule of prices which, in nearly every instance, was based upon a unit measurement of quantity and, in a few instances, upon a lump sum for doing a particular portion of the work. The quantities shown in this schedule of prices were expressly stated to be only approximate, and, as to the items for which a unit price was stated, the compensation was to be computed in accordance with the actual amount of work done at the rate fixed for the unit of measurement. One of the principal portions of the work to be performed was the erection of an earth embankment for the dam. The contract provided that the petitioner should secure the material from borrow pits upon the respondent's property. The estimated amount of material required was set forth in the contract as fifty-two thousand cubic yards and the compensation at the rate of forty cents a cubic yard. The final estimate of the engineer showed that only forty-two thousand four hundred twenty

cubic yards were used for this embankment; for this the petitioner was paid at the prescribed rate, which, according to the contract, was to be "full compensation for the preparation of the dam site, for spreading and compacting the earth, removal of stones and roots, for trimming and grading, for wetting and for all work and expense incidental thereto . . . ." The petitioner's compensation for laying the pipe line was $18,218, which was "full compensation for the removal of all surface material and obstructions, all excavation, including ledge and boulders . . . ." The parties make no contention that the contract has not been fully performed.

Upon the completion of the contract, the petitioner, under date of September 17, 1937, wrote the respondent that the appearance of the borrow pits indicated that the material to be excavated would be gravel, but that it had encountered a very heavy excavation consisting in large percentage of boulders and rock which had increased the cost of doing the work, and that "we maintain that such excess cost was caused by reason of the extreme divergence in the character of the material to be excavated from that which we were justifiably led to expect by reason of the data furnished and the appearance of the test pits indicated, together with the discrepancies in conditions along pipe line and in pay quantities." The letter also directed the respondent's attention to article 13 of the contract and requested that, in accordance with this article, an adjustment of prices be made, "in order that we may receive a fair and equitable reward for our labors." The respondent did not make any changes in the contract prices. The petitioner, on October 8, 1937, submitted a bill for "additional costs beyond our control as described" in its letter of September 17, 1937. The bill set forth a claim in ten items amounting to $37,451.76. The first item was for "Additional cost constructing earth embankment due to conditions of borrow pits $18,564.22," and another item was for "Added cost laying water pipe — conditions not shown $9,943.24."

The contract in article 3 provided that the engineer was in the first instance to be the interpreter of the contract, and

that all work was to be done in such a manner as to satisfy him that the intent of the contract was observed. He was to decide all claims of either party and his decisions were to be final "except as to the element of time and as to financial considerations involved, which, if no agreement in regard thereto is reached, shall be subject to arbitration as provided under Article XVI . . . ." This latter article provided that the decisions of the engineer that were not final under article 3 were to be subject to arbitration under the rules of a certain designated association upon the demand of either party. Article 13 provided that "If any change in the character, quality or quantity of the work shall, in the judgment of the Engineer, be so material as to warrant either an increase or decrease of the Contractor's compensation which can be equitably effected by an adjustment of any price or prices quoted in the Proposal, in the Schedule of prices therein, the Engineer shall have authority, subject to approval by the Owner, to make such adjustment of said price or prices as he may deem equitable, and the Contractor's compensation shall be computed accordingly." This article was not to apply to changes in the quantity of work unless it resulted in an increase or decrease of more than twenty-five per cent of the estimated quantity stated in the contract.

The engineer refused to make any adjustment and the petitioner, purporting to act under article 16, presented its claim to a board of arbitration, which made an award of $18,575. The arbitrators refused to specify the items that were included in this award, but it is apparent from the items submitted to the board that the award included compensation under both or either of the claims arising from building the embankment and laying the pipe line. Upon petition this award was accepted and confirmed in the Superior Court and judgment was ordered to be entered for the petitioner. The respondent excepted to the denial of its motion to set aside the award and to the refusal to grant certain requests for rulings. The respondent urged before the board, before the Superior Court and before this court that the items upon which the award was made were not arbitrable under the contract or under the statute, G. L. (Ter. Ed.)

c. 251; that the board had no jurisdiction to make the award nor had the court to confirm it; and that proceedings for arbitration were begun after the time permitted by the contract.

If the parties of their own accord and outside of court saw fit to submit to arbitration, without restriction or condition, the whole matter in dispute, including all questions of law and of fact, then the decision of the arbitrators upon the subject matter, in the absence of fraud, is binding and conclusive upon the parties, even though the arbitrators may have committed an error of law in reaching their conclusion. *Jones* v. *Boston Mill Corp.* 6 Pick. 148. *Smith* v. *Boston & Maine Railroad,* 16 Gray, 521. *Rundell* v. *La Fleur,* 6 Allen, 480. *Norcross* v. *Wyman,* 187 Mass. 25. *Phaneuf* v. *Corey,* 190 Mass. 237. *Darrow* v. *Braman,* 201 Mass. 469.

The validity of the award is challenged not merely on the ground that the arbitrators have made an erroneous decision but upon the ground that they had no right to make any decision at all. In other words, the respondent's contention is that the board was not empowered to hear and determine the matter. That point is open. If authority was lacking, then the award is void. *Mickles* v. *Thayer,* 14 Allen, 114, 121. *Boyden* v. *Lamb,* 152 Mass. 416. *Colombia* v. *Cauca Co.* 190 U. S. 524. *The Atlanten,* 252 U. S. 313. *Marchant* v. *Mead-Morrison Manuf. Co.* 252 N. Y. 284. The authority of the arbitrators depends upon the terms of the agreement of submission. *Towne* v. *Jaquith,* 6 Mass. 46. *Phippen* v. *Stickney,* 3 Met. 384. *Haven* v. *Winnisimmet Co.* 11 Allen, 377. *Washburn* v. *White,* 197 Mass. 540. The burden was upon the petitioner to show that the contract provided for the settlement of this particular claim by arbitration. *Norcross* v. *Wyman,* 187 Mass. 25. *Morgan* v. *Murdough,* 216 Mass. 502. *Marchant* v. *Mead-Morrison Manuf. Co.* 252 N. Y. 284. *Lehman* v. *Ostrovsky,* 264 N. Y. 130.

The petitioner sought compensation in excess of that fixed by the contract because of changes in the contract prices, which it requested should be effected under article 13. Upon the failure of the respondent to make such changes,

the petitioner, purporting to act under article 16, presented its claims to arbitrators. This last mentioned article is the only provision in the contract that deals with the settlement of disputes by arbitration, and includes claims arising under article 3. These three articles are the only provisions that are now material in deciding whether the respondent had agreed to submit these various items constituting the petitioner's claim to arbitration. These articles are parts of a single contract, which the parties adopted as an appropriate method for the practical accomplishment of the work therein described. Each article must receive a reasonable construction in accordance with the terms in which it is couched, in view of its relation to the remaining provisions of the contract, and with proper consideration given to the main object and aim of the contract in the light of the circumstances attending its execution. The ordinary and natural scope and effect to be attributed to any article are not to be restricted or limited by undue emphasis accorded to some other provision. The parties put their contract in permanent form, and they must have thought that the words they selected were necessary and adequate to express fully the undertaking upon which they had embarked. *Wit* v. *Commercial Hotel Co.* 253 Mass. 564. *Bray* v. *Hickman*, 263 Mass. 409. *Maksymiuk* v. *Puceta*, 279 Mass. 346. *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367. *Radio Corp. of America* v. *Raytheon Manuf. Co.* 300 Mass. 113. *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495.

An examination of the three articles shows that the engineer was required to make prompt and impartial decisions upon all the matters specified in article 3; that all of these decisions were to be final excepting only "as to the element of time and as to financial considerations involved," which, in case the parties did not agree, were to be submitted to arbitration under article 16. This last article prescribed the procedure to be adopted in case of arbitration. It did not extend the field of arbitrable controversies. That was fixed by article 3. Both together by express reference comprised every provision of the contract

that dealt with arbitration. The only arbitrable claims are those which arise under the existing contract and out of matters concerning which the engineer had authority to make a determination. They must arise out of matters concerning which the engineer had authority to determine, and they must be under the existing contract. On the other hand, article 13 has nothing whatever to do with arbitration. It is in no way connected with or dependent upon articles 3 and 16. It is concerned entirely with an adjustment of prices. The engineer is not required to make any adjustment of prices. He has no authority to do so unless the respondent approves. He has power to settle disputes arising under an existing contract, but he could not, without the consent of the owner, change the prices that had already been fixed by the contract. A change of prices was covered exclusively by article 13 and did not come within the provisions of article 16 governing claims that were arbitrable. *Ferguson* v. *Union Mutual Life Ins. Co.* 187 Mass. 8. *Derby Desk Co.* v. *Conners Brothers Construction Co.* 204 Mass. 461. *Dahlstrom Metallic Door Co.* v. *Evatt Construction Co.* 256 Mass. 404. *Ginsburg* v. *Jacobson,* 276 Mass. 108. *Radio Corp. of America* v. *Raytheon Manuf. Co.* 300 Mass. 113. *Malden Knitting Mills* v. *United States Rubber Co.* 301 Mass. 229. *Belmont* v. *Trenholm,* 302 Mass. 215. *Lew Morris Demolition Co. Inc.* v. *George F. Driscoll Co.* 273 N. Y. 330.

We are confirmed in this view not only by a comparison of these three articles but also by other provisions of the contract. The petitioner expressly agreed that it had informed itself fully in regard to all conditions pertaining to the place where the work was to be done; that it had obtained all information necessary to enable it fully and fairly to estimate the costs of the work; that it would at its own cost and expense provide and do everything necessary to perform fully the contract; that it would not make claim on account of any error in the soundings or borings; that it would bear and sustain all damages of whatever nature or cause resulting from the work; and that it would "bear all losses resulting to . . . [it], including but not

limited to losses sustained on account of the amount or character of the work, or because of the nature of the land in or on which the work is done being different from what was estimated or expected." It is clear that the work prescribed by the contract was to be done at the risk of the petitioner. *Rowe* v. *Peabody,* 207 Mass. 226. *Winston* v. *Pittsfield,* 221 Mass. 356. *Morse* v. *Boston,* 260 Mass. 255. But we are for the moment concerned only with the question of construction of the contract and not with the liabilities of the parties, although the latter may follow from the former. Compensation for the assumption of this risk was included in the prices fixed by the contract and if, on account of the nature of the subsoil, the work of excavating became more difficult and expensive than the petitioner expected, it could apply to the respondent for an equitable adjustment of the prices. The parties had by article 13 furnished the remedy which, if proved to be inadequate, would not authorize one to substitute, without the consent of the other, another method to recoup an alleged loss. *Paris* v. *Hamburg-Bremen Fire Ins. Co.* 204 Mass. 90. *Marsch* v. *Southern New England Railroad,* 230 Mass. 483. *Charlton* v. *Library Bureau,* 260 Mass. 1. *Charles I. Hosmer, Inc.* v. *Commonwealth,* 302 Mass. 495.

The arbitrators refused to specify the items contained in their award. We think it clear that they could not have arrived at their conclusion without including a part of the petitioner's claim for additional compensation in building the embankment or in laying the water pipe. The award was for an indivisible lump sum and, as part of it was beyond the power of the arbitrators to make, the whole award must be set aside. The respondent's motion to set aside the award should have been granted. In view of the conclusion we reach, it is not necessary to consider the requests for rulings. *Barrows* v. *Capen,* 11 Cush. 37. *Brown* v. *Evans,* 6 Allen, 333. *Yeamans* v. *Yeamans,* 99 Mass. 585. *Camp* v. *Sessions,* 105 Mass. 236. *Kabatchnick* v. *Hoffman,* 226 Mass. 221.

*Exceptions sustained.*