**MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N v. UNITED CASUALTY CO. et al.**

**No. 3917.**

Circuit Court of Appeals, First Circuit.

April 21, 1944.

V. J. Skutt, of Omaha, Neb., James M. Graham, of Boston, Mass., George J. Cleary and Philip E. Horan, both of Omaha, Neb., and Joseph A. Scolponeti, of Boston, Mass., for appellant.

Ralph E. Tibbetts, Philip T. Doherty, and Bond, Tibbetts & Doherty, all of Boston, Mass., for appellees United Casualty Co. and Craftsman Ins. Co.

Robert T. Bushnell, Atty. Gen., and Milton A. Westgate and John J. Walsh, Asst. Attys. Gen., for Harold P. La Croix.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Appeal has been taken in this case from a final judgment dismissing a complaint which asked for a declaratory judgment and a money judgment.

The plaintiff Mutual Benefit Health & Accident Association, hereinafter referred to as the Association, is a Nebraska corporation engaged in the health and accident insurance business. The defendant United Casualty Company, hereinafter called the Company, is a Massachusetts corporation engaged in the same business. The Company decided to terminate its active existence, and entered into an agreement effective July 1, 1940, with the Association for reinsurance of that portion of its policies theretofore issued as "hospital expense" policies. Defendant Craftsman Insurance Company was alleged in the complaint to have taken over the business and to have agreed to pay all the debts of United Casualty Company. The defendant La Croix was the arbitrator, designated in the agreement between the Association and the Company, with authority to decide a certain type of dispute arising under the agreement; just why he was joined as a defendant in a complaint of this nature is not clear to us.

The agreement between the Association and the Company was executed in Massachusetts, and both appellant and appellees accept the proposition that the interpretation of the agreement and the effect of the arbitrator's award are governed by Massachusetts law.

This agreement contains a preliminary recital reading as follows:

"In the ordinary course of business, the Company's Hospital Insurance business would be renewed and continued, but it is the desire of the Company to retire from this Hospital Insurance business and to sell, assign, and transfer, all of such business together with the good will in connection therewith to the Association so that subject to the provisions of their respective policies, the holders of such policies may continue their insurance as policy holders of the Association. It is the desire and intention of the Company to pay to the Association cash to cover one hundred (100%) per cent gross unearned premium reserve on these policies in force July 1, 1940, plus cash in an amount sufficient to constitute an adequate reserve to adjust and pay all claims under such policies incurred prior to July 1, 1940, and unpaid by the Company on that date. It is the desire and intention of the Association to accept such transfer and payment and to assume all liability of the Company on such Hospital Insurance thus transferred. * * *"

Clause 1 of the agreement reads as follows:

"1. On or before July 1, 1940, the Company will pay to the Association in cash, the sum of Fifty One Thousand ($51,000) dollars as the estimated claim reserve to cover payment of all such claims incurred by the Company on its Hospital Insurance prior to July 1, 1940, which are unpaid on that date. As soon as practicable after July 1, 1940, the actual amount of such claim reserve shall be ascertained by the Insurance Department of the Commonwealth of Massachusetts without expense to either of the parties hereto. When the actual amount of the claim reserve has thus been determined, an adjustment of the estimated claim reserve shall be made by the parties so that if the actual amount is less than the estimated amount, the Association will forthwith pay the difference to the Company, and if the actual amount is greater than the estimated amount, the Company will forthwith pay the difference to the Association. Until the actual amount is thus determined, all assets of the Company shall be subject to a lien to secure the payment of any difference that may be found due the Association."

The method of determining the actual amount of the aforesaid "claim reserve," including the settlement of disputes which might arise in reference thereto, is spelled out more precisely in clause 4 of the agreement, reading as follows:

"4. All such claims paid by the Association's auditor shall be paid by draft upon the Association. The amount of any claim paid by the Association's auditor, if the claim was incurred prior to July 1, 1940, shall be considered the amount of actual reserve on that claim as of July 1, 1940. In ascertaining whether claims were incurred prior to July 1, 1940, each claim will be considered on its merits and will be taken to have been incurred prior to July 1, 1940, if the Insured's accident occurred prior to that date or if his sickness first became apparent prior to that date. In the event of any disagreement between the Company and the Association's auditor with respect to the incurred date of any claim, the Insurance Department's Examiner shall resolve the doubt."[1]

Pursuant to the agreement the calculation of the actual claim reserve was submitted to La Croix, an examiner in the Insurance Department, who was the individual designated as arbitrator. He determined that the amount of the actual claim reserve was $50,412.96, as against $51,000, the estimated claim reserve stated in clause 1 of the agreement.

The matter now in dispute involves the arbitrator's treatment of claims for maternity confinement covered by the Company's hospital expense policies. The arbitrator La Croix, in his answer, explains how he dealt with these cases, as follows:

"3. That said defendant La Croix undertook to determine the incurred date, so called, of all claims arising under section 4 of said contract above referred to, involving maternity confinement, in all policies outstanding which the petitioner acquired from the defendant United Casualty Company pursuant thereto.

"4. That in determining the amount of the claim reserve to be paid by the defend-

---

[1] The District Court in its memorandum opinion states as follows: "Counsel for the parties have also agreed in open court that the language of their contract which provides that the 'Examiner will resolve the doubt' is to be construed as meaning that 'the Examiner will make a decision and his decision shall be final and binding upon the parties.' This construction seems to me correct, and I should have reached the same interpretation, even if counsel had not been in accord."

ant United Casualty Company to the plaintiff, the defendant La. Croix determined the incurred date in all so-called maternity cases as the date of hospitalization of the insured, that is, the date when said insured entered the hospital, and if such entry into a hospital was not on or prior to July 1, 1940, determined that the claim made for hospitalization should not be set up or allowed as a claim incurred prior to July 1, 1940, and has taken all maternity cases as a whole and has ruled and resolved that in all said maternity cases where the insured was not in the hospital on or prior to July 1, 1940, liability therefor was placed by said contract upon the petitioner herein."

It is the contention of the Association that the decision of the arbitrator is not binding on it, because he did not follow the terms of submission, and failed to apply the formula or yardstick set forth in the agreement to guide him in determining the "incurred date" of any claim in dispute. Particularly, the Association insists that in determining the incurred date of maternity claims the arbitrator ignored the prescription in the agreement that "each claim will be considered on its merits"; that is, he lumped all such claims together and ruled, as to them, that the incurred date was the date of hospitalization. Contending that the word "sickness" in clause 4 of the agreement includes pregnancy, the Association asserts that the arbitrator, in applying the yardstick, should have determined in each case when the pregnancy first became apparent; that if the pregnancy first became apparent prior to July 1, 1940, then the particular claim should have been found to have been incurred prior to that date, and the amount paid by the Association thereon should have been added to the actual "claim reserve" which the Company had obligated itself to pay over to the Association.

The Company, for its part, contends that the dividing line fixed in the agreement was July 1, 1940; that on all hospital expense policies then oustanding, the Association was to receive that portion of the premiums allocable to the period subsequent to July 1, 1940, the Company retaining that portion of the premiums thereon earned up to such date; that, in general, the bargain was that the Association would bear the burden of paying all claims incurred on and after July 1, 1940, the Company reimbursing the Association only for payments on claims incurred prior to July 1, 1940, and unpaid by the Company on that date; that since the

insurance policies involved covered only hospital expenses, no claim could be incurred or liability thereon accrue, under the terms of the policies, until an insured went to the hospital; that as a concession to the Association the Company agreed in clause 4, above quoted, that in accident and sickness cases the claims should be treated as though they had been incurred prior to July 1, 1940, if the insured's accident occurred prior to that date or if his sickness first became apparent prior to that date, but that the agreement contained "no provision broadening the basis of claims for hospital residence resulting from confinement in childbirth cases to include any cases other than those where hospitalization had actually occurred prior to July 1, 1940"; that since the Association received the premiums on all hospital expense policies allocable to the period from and after July 1, 1940, the Company would never have agreed to assume the burden of payment on claims for maternity confinement where the pregnancy occurred prior to that date but where claims for hospitalization expenses might not accrue until many months thereafter. Furthermore, the Company contends, the arbitrator decided the very question submitted to him, and his decision is binding on the parties under the Massachusetts law.

The District Court dismissed the complaint on the ground that the plaintiff cannot "by a suit for a declaratory judgment reopen the questions which it referred to a neutral for a binding decision and which the neutral decided against the plaintiff." We hold that this ruling was correct.

It is well established in Massachusetts that an arbitration award may not be set aside either for an error of fact or law, so long as the arbitrator acted in good faith and did not exceed his authority under the terms of the submission. Boston Water Power Co. v. Gray, 1843, 6 Metc., Mass., 131; Fitzgerald Construction Co. v. Southbridge Water Supply Co., 1939, 304 Mass. 130, 23 N.E.2d 165. If the parties submit to an arbitrator for final decision a dispute the settlement of which requires the construction of a contract or the determination of some other question of law, his decision is binding notwithstanding that the award may have been based upon an error of law. It is true that the question whether the arbitrator followed the terms of the submission is open to court review; and ordinarily a decision by an arbitrator as to the scope of the authority conferred upon him by the:

submission is not binding. See Fitzgerald Construction Co. v. Southbridge Water Supply Co., supra, 304 Mass. at page 134, 23 N.E.2d at page 167; B. Fernandez & Hnos., etc., v. Rickert Rice Mills, 1 Cir., 1941, 119 F.2d 809, 136 A.L.R. 351. These principles are really not now in dispute; the only question is as to their application to the facts in the case at bar.

■ There is no doubt that the parties submitted for the arbitrator's decision disputes as to the incurred date of "any claim" under the hospital expense policies, including claims for maternity confinement. The submission is contained in the last sentence of clause 4 of the agreement, reading: "In the event of any disagreement between the Company and the Association's auditor with respect to the incurred date of any claim, the Insurance Department's Examiner shall resolve the doubt." Disagreement arose as to the incurred date of claims for maternity confinement. It does not appear that the dispute in any case was as to the actual date on which the insured went to the hospital. Rather the dispute was whether "sickness" included pregnancy cases within the meaning of clause 4 of the agreement so as to call for the application to maternity confinement cases of the special contract meaning of "incurred date", namely, the date on which the sickness (pregnancy) first became apparent. The Association claimed that it did. The Company claimed that it did not, and that since claims for maternity confinement were not covered by this special contract definition of "incurred date," the incurred date of such claims must be taken to be the date of hospitalization, because under the terms of the hospital expense policies no liability could accrue to the insurer until the insured went to the hospital. Obviously, to decide this disputed point the arbitrator necessarily had to interpret the agreement, and this he proceeded to do under the terms of the submission. He ruled that the word "sickness" in clause 4 did not include pregnancy, and thus concluded "that in all said maternity cases where the insured was not in the hospital on or prior to July 1, 1940, liability therefor was placed by said contract" upon the Association. Whether he correctly interpreted the contract in this particular is immaterial; he decided the very question submitted to him, and the award is binding. In fact, in a stipulation submitted by the parties to the court below it was stated that the arbitrator "acted in good faith and without fraud," and that he "did not exceed the authority conferred upon him but the plaintiff contends that the examiner misconstrued the provisions of the contract dealing with the incurred date of claims and that an adequate reserve was not set up for pregnancy claims." Whether or not the arbitrator, acting within the scope of the authority conferred upon him, misconstrued the contract, the plaintiff must abide by the decision of its chosen tribunal.

■ We may say that we are far from convinced that the arbitrator made any mistake in interpreting the contract. The word "sickness" certainly does not necessarily include pregnancy. See The Queen v. Huddersfield, 1857, 7 El. & Bl. 793. Appellant makes much of the argument that the Company was only authorized to insure against accident or sickness and that if the maternity confinement claims were not construed to be cases of sickness the Company acted ultra vires in writing such risks. We are not impressed with this argument. Under the applicable Massachusetts statute, Mass. G.L. (1932) c. 175, § 47, the Company was authorized "to make insurance upon the health of individuals." No doubt this is broad enough to authorize the Company to contract to indemnify an insured for expenses on account of any bodily condition necessitating hospital or medical care. But it does not follow from this that "sickness" as used in clause 4 of the agreement necessarily was intended to include pregnancy. In fact, the standard hospital expense policies written by the Company expressly differentiate between hospital residence necessitated by sickness and hospital confinement due to childbirth. The so-called "Insuring Clause" recites that the policy "insures against loss due to expense of Hospital residence, * * * necessitated by sickness. * * *" Later, in § 4 of the policy a so-called "Additional Coverage for Women" reads: "After one year from the date of issue of this policy, the Company will pay not more than $5.00 per day for a period not exceeding ten days for hospital confinement due to childbirth and also the cost of delivery room not exceeding $10.00 in any one policy year."

Furthermore, it is not without significance that in their agreement the parties fixed $51,000 as their estimate of the "claim reserve" which the Company had obligated itself to establish to cover the payment of claims on hospital expense policies incurred prior to July 1, 1940. The actual reserve

found by the arbitrator turned out to be very near this estimated figure, namely, $50,412.96. If the Association's contention were correct as to the incurred date of claims for maternity confinement, the actual reserve would have been increased to a figure approximating $120,000. Hence it would seem fair to infer that maternity claims were not considered by either party as being governed by the provision of clause 4 of the agreement fixing the incurred date as the date the "sickness first became apparent"; for though this estimated figure was subject to adjustment, it is improbable that the estimate could have been so far wrong as is claimed by the Association.

However, as previously indicated, it is not necessary for us now to decide whether the arbitrator made a mistake in the interpretation he put upon the contract. It is enough that under the terms of the submission he necessarily had to interpret the contract in order to decide the dispute referred to him, and that his award, made in good faith, within the scope of his authority, is not open to judicial review.

The judgment of the District Court is affirmed, with costs to the appellees.