LINDA GREENLEAF GLICK *vs.* RICHARD S. GREENLEAF.

Norfolk. December 5, 1980. — April 2, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Probate Court,* Jurisdiction. *Jurisdiction,* Probate Court. *Divorce,*
Separation agreement.

An action against the plaintiff's father to enforce the provisions of a sepa-
ration agreement entered into by the plaintiff's parents and seeking a
constructive trust of certain funds for the benefit of the plaintiff was
within the jurisdiction of the Probate Court under G. L. c. 215, § 6,
even though the relief ultimately awarded by the Probate Court was
direct payment of a sum of money from the plaintiff's father to the
plaintiff. [293-295]
Where a plaintiff's father was required by the provisions of a separation
agreement to execute the documents necessary to waive any right of
surrender of his interest in a retirement plan, to elect to receive upon
retirement his interest in the plan as an annuity waiving any right to
accept a lump sum payment, and to provide that upon his severance
from the plan the assets be placed in a trust for the benefit of the wife
and two children, the assets of which were to be disbursed to the
children upon the wife's death or remarriage, and where the plaintiff's
father failed to execute such documents and, upon his severance from
the plan, used the assets to purchase an annuity contract, the plaintiff
was entitled on her mother's death to recover an amount equal to one-
half of her father's interest in the fund. [295-298]

CIVIL ACTION commenced in the Probate Court for the
county of Norfolk on January 31, 1978.

The case was heard by *Wagner,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Alexander H. Pratt, Jr.,* for the defendant.

*Matthew H. Feinberg* for the plaintiff.

ABRAMS, J. In this appeal we are asked to consider
whether the Probate Court has subject matter jurisdiction

over an action brought by the plaintiff against her father concerning the interpretation of a separation agreement incorporated into her parents' divorce judgment. A judge in the Probate Court concluded that the court had jurisdiction and entered a judgment in favor of the plaintiff. The Appeals Court reversed, holding that the defendant's motion to dismiss for lack of jurisdiction should have been allowed. See *Glick* v. *Greenleaf*, 9 Mass. App. Ct. 606, 608 (1980). We granted further appellate review. We affirm the judgment entered in the Probate Court.

The case was before the Probate Court on the following statement of agreed facts. The defendant and the plaintiff's mother (now deceased) were divorced in Connecticut in 1966. A separation agreement was executed and incorporated into the judgment of divorce. At the time of the divorce, the defendant was employed by Morris Alper & Sons, Inc. (Morris Alper), and had a vested interest in the amount of $18,570.41 in that company's retirement plan. Paragraph 5 of the separation agreement, set forth in the margin,[1] contained provisions regarding this interest. Para-

---

[1] "5. The Husband, at the present time, has a vested interest in The Morris Alper & Sons, Inc. Profit Sharing Retirement Plan And Trust in the amount of $18,570.41. Upon the entry of a decree of divorce, the Husband shall forthwith execute any and all instruments or documents necessary to effectuate the following in regard to the Morris Alper & Sons, Inc. Profit Sharing Retirement Plan and Trust:

"a) A waiver of any right of assignment, alienation, sale, hypothecation or surrender of his interests to the extent of $18,570.41 in said fund excepting upon the express written consent of his wife, Jean Bruce Greenleaf.

"b) An election to receive upon retirement that portion of the fund to the extent of $18,570.41 as an annuity waiving any right to accept a lump sum payment excepting on the written consent of his wife, Jean Bruce Greenleaf.

"c) To provide that upon his death or his severance from the Profit Sharing Retirement Plan and Trust prior to his death that his death benefits or severance benefits to the extent of $18,570.41 shall be paid to Frank Mongillo, Esq., 185 Church Street, New Haven, Connecticut, or his successor as Trustee for the benefit of Jean Bruce Greenleaf to pay to her in weekly installments the amount equal to the amount of alimony

graph 5 required the defendant to waive certain rights in the earmarked funds and to obtain the written consent of his wife if he wished to receive the funds in a lump sum rather than an annuity. In the event he severed himself from the retirement plan the $18,570.41 was to be placed in trust for the benefit of the wife and children. Demands were made on the defendant to comply with the separation agreement and execute the instruments[2] necessary to transfer the $18,570.41. The judge found, however, that the defendant failed to execute any such instruments and did not place funds in trust for the benefit of his wife and children.

On December 21, 1966, the defendant left the employ of Morris Alper & Sons, Inc. In April, 1974, he authorized withdrawal of his $18,570.41 interest in the retirement fund to be used to purchase an annuity contract from the Metropolitan Life Insurance Company (Metropolitan Life). The annuity is assignable and can be surrendered by the defendant for cash value at any time. The defendant's attorney, Frank Mongillo, is designated the primary revocable beneficiary. The plaintiff and her brother are named contingent

---

received by her per week at the time of the death of Richard S. Greenleaf or an amount equal to the last weekly payment made prior to the death of Richard S. Greenleaf so long as she shall live and is unmarried. Upon her death or upon her remarriage, said Trustee is to pay the balance of said fund to Richard Bruce Greenleaf and Linda Greenleaf [Glick], share and share alike, free of any and all trusts. In the event that either Richard Bruce Greenleaf or Linda Greenleaf [Glick] predeceases Jean Bruce Greenleaf, then in that event said child's share shall go to its issue per stirpes the same to be theirs absolutely and forever."

[2] Paragraph 9 of the separation agreement provides in part: "Each party for himself or herself or his or her respective personal representatives agree that he or she will at any time and from time to time hereafter take any and all steps and execute and deliver any and all instruments, Agreements, conveyances, Wills and insurances which the other party or his or her personal representative shall reasonably require for the purpose of giving full force and effect to the provisions and the intent and purpose of this Agreement, and so that the parties may act regarding their real and personal property exactly as if they were single and unmarried."

revocable beneficiaries.[3] The plaintiff's mother died on September 14, 1976, more than two years after the annuity contract was purchased.

The judge ruled that the Probate Court had subject matter jurisdiction over a valid separation agreement entered into in another State, and that G. L. c. 215, § 6, confers jurisdiction on the Probate Court. He determined that "where, as here, a Separation Agreement between the parents is made and is for the benefit of the children as well as the parents, the children or either of them is entitled to enforcement of the Agreement." The judge concluded that pursuant to paragraph 5 (c) the plaintiff was entitled to the sum of $9,285.20 with interest thereon "from September 14, 1976 until the date of [the] judgment as provided by law." The defendant appealed.

*Jurisdiction.* The defendant claims that the allegations in the plaintiff's complaint and her request for money relief deprive the Probate Court of subject matter jurisdiction over the plaintiff's complaint. He asserts that since the plaintiff has an adequate remedy at law, there is no jurisdiction in equity.

General Laws c. 215, § 6,[4] recognizes the special expertise the Probate Courts have developed in the areas of fam-

---

[3] The plaintiff's original complaint prayed for recovery in the amount of $18,570.41, plus costs and interest. The complaint was amended to set the amount at $9,285.21. The plaintiff's brother makes no claim on the other half of the $18,570.41.

[4] General Laws c. 215, § 6, as appearing in St. 1975, c. 400, § 55, provides in part: "Probate courts shall have original and concurrent jurisdiction with the supreme judicial and superior courts of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, shall be courts of general equity jurisdiction . . . .

"Probate courts shall also have jurisdiction concurrent with the supreme judicial and superior courts, of all cases and matters in which equitable relief is sought relative to: . . . (*iii*) trusts created by will or other written instrument; . . . (*v*) trusts created by parol or constructive or resulting trusts. . . . They shall also have jurisdiction to grant equitable relief to enforce foreign judgments for support of a wife or of a wife and minor children against a husband who is a resident or inhabit-

ily law, trusts, and constructive trusts, see Thirty-sixth Report of the Judicial Council, Pub. Doc. No. 144, at 56-57 (1960), and grants Probate Courts jurisdiction to interpret various types of written agreements concerning family matters.

The plaintiff is seeking equitable relief relative to a matter enumerated in the statute and cognizable under the general principles of equity jurisprudence. The complaint alleges fraud by the defendant in transferring certain funds into an annuity plan, in violation of a separation agreement entered into by the plaintiff's parents. The plaintiff also asks the court to establish a constructive trust of the assets which should have been placed in trust under paragraph 5 (c). In substance, the allegations suggest that the defendant is violating a fiduciary duty toward his daughter in failing to give due recognition to her interests under paragraph 5 (c). The fact that the plaintiff included in her complaint a prayer that the defendant be ordered to compensate her directly does not remove the case from the Probate Court's jurisdiction. "Relief is based on the allegations of a bill, and not on its prayers." *Commonwealth* v. *DeCotis*, 366 Mass. 234, 246 (1974), and cases cited.[5]

Further, the Massachusetts Rules of Civil Procedure permit a litigant to assert separate claims in a complaint, regardless of whether they are legal or equitable. Mass. R. Civ. P. 8 (a) (2), 365 Mass. 749 (1974).

The fact that the relief ultimately awarded by the Probate Court was direct payment of a sum of money from the

ant of this commonwealth, upon an action by the wife commenced in the county of which the husband is a resident or inhabitant. They shall, after the divorce judgment has become absolute, also have concurrent jurisdiction to grant equitable relief in controversies over property between persons who have been divorced."

[5] The complaint also asks the Probate Court judge to declare that the funds segregated by paragraph 5 were held in trust. Hence, the Probate Court also had jurisdiction under G. L. c. 231A, § 1, to make a declaration of rights and duties under the separation agreement apart from the issue of appropriate relief.

defendant to the plaintiff does not take the case out of the court's jurisdiction. Jurisdiction is established if the specific matter falls within the general grant of jurisdiction to a particular court.[6] In an action in equity to establish a constructive trust in certain property, "alternative relief by compensation for wrongful use of the money is within [the scope of general equity] jurisdiction." *Jones* v. *Jones*, 297 Mass. 198, 203-204 (1937). In sum, the subject matter of the plaintiff's complaint is plainly within the court's jurisdiction of the issues raised. There was no error in the probate judge's assertion of jurisdiction.[7]

*Construction of the separation agreement.* The Probate Court judge found that, by the terms of paragraph 5 (a) of the separation agreement, the defendant irrevocably divested himself of all right or interest to the extent of $18,570.41 in the Morris Alper retirement plan. The judge held that the defendant was required to place that amount in trust for his wife and children at the time of his severance from the plan and that the trustee had no authority to disburse the $18,570.41 except in compliance with paragraph 5 (c). The judge concluded that, at the time of the death of the plaintiff's mother on September 14, 1976, the defendant or trustee was obligated to disburse one-half of the money to the plaintiff.

On the other hand, the defendant asserts that, if paragraphs 5 (b) and 5 (c) are read together in the context of the entire agreement, it is evidence that it was the intent of the parties that the defendant receive payments from an annui-

---

[6] A separation agreement executed and incorporated into a divorce decree in another State is enforceable in equity in Massachusetts. *Lipman* v. *Sprague*, 349 Mass. 774 (1965). See *Richards* v. *Richards*, 270 Mass. 113 (1930).

[7] Since we conclude there is jurisdiction in the Probate Court, we leave open the question whether a judge faced with a serious jurisdictional issue must dismiss a complaint or whether the proper procedure is for a judge to ask the Chief Administrative Justice to transfer the case, or the judge, or both, to the appropriate department. See G. L. c. 211B, § 9, inserted by St. 1978, c. 478, § 110. See also G. L. c. 211, § 4A.

ty purchased by the retirement fund until his death. The trust agreement in paragraph 5 (c), he argues, was merely intended to segregate a fund from which alimony payments would continue to be made after the defendant's death. If the withdrawal of the $18,570.41 from the Morris Alper retirement fund to purchase an annuity contract was a "severance" within the meaning of 5 (c), the defendant argues, then the Metropolitan Life annuity contract naming his attorney (as trustee) and children as beneficiaries fulfils the purpose of paragraph 5 (c). In any event, the defendant contends, the plaintiff was to receive the balance of the fund only if the defendant predeceased his former wife and her alimony payments were taken, after his death, from the trust fund.

When an element of ambiguity appears in a written instrument, we consider the entire instrument and the general scheme it reveals to determine the significance and meaning of the ambiguous terms. See *MacDonald* v. *Gough*, 326 Mass. 93, 96 (1950); *Standard Sanitary Mfg. Co.* v. *Hartfield Realty Co.*, 284 Mass. 540, 544 (1933); *Lovell* v. *Commonwealth Thread Co.*, 272 Mass. 138, 140-141 (1930). Although the question is close, on the whole we think the construction of the separation agreement favoring the plaintiff is more persuasive.

At the time of the divorce, the defendant was required to execute the documents needed to effectuate the provisions of paragraphs 5 (a), (b), and (c). He failed to do so. He now argues that the annuity contract he purchased from Metropolitan Life effectuates the same purpose as the trust which should have been created under paragraph 5 (c). Further, he argues that paragraph 5 (b) expressly reserves in him the right to receive his interest in the fund as an annuity until his death.

We agree that under paragraph 5 (b) the defendant could' have elected to receive his interest in the retirement fund as an annuity. However, he was required by the separation agreement to execute documents making that election at the time of the divorce. He did not do so. Moreover, the de-

fendant was also required to execute a waiver of any right to accept a lump sum payment, except on the written consent of his wife. The defendant did not execute a waiver. The annuity contract bought by the defendant is contrary to the provisions of paragraph 5 (b), as it was paid for upon receipt of the lump sum of the defendant's interest in the Morris Alper plan, without the written consent of his former wife.

Since the annuity contract does not meet the requirements of paragraph 5 (b), the withdrawal of the fund with which it was purchased must be viewed as a severance from the Morris Alper plan. In the event of a severance, paragraph 5 (c) requires the defendant's interest in the Morris Alper plan to be placed in trust for his wife and children. At the defendant's death[8] the trust would have provided alimony payments to the wife during her life or until she remarried and would then go to the children.

The annuity contract which the defendant purchased with the funds does not fulfil the general scheme set forth in paragraph 5. The money was not placed in a trust for the protection of the wife. The annuity purchased may be assigned or surrendered for cash value at any time and therefore is contrary to the provisions of paragraph 5 (a). See note 1, *supra* . The defendant failed to comply with the

---

[8] The language of paragraph 5 (c) is not entirely clear, but we read the language specifying that alimony payments from the trust fund were to be in the amount paid by the defendant at the time of his death as indicating that the parties intended payment to be made from the trust only after the death of the defendant. The defendant argues that, if this interpretation is correct, the $18,570.41 is "frozen" during the time between his retirement and his death, as he would receive no annuity and his wife could not be paid from the fund until after the defendant's death. He argues that unless he was receiving an annuity, the alimony payments, determined as a percentage of his gross income, would be drastically reduced after his retirement, and neither party would have use of the funds segregated by paragraph 5. Thus, the defendant argues, the parties must have intended that he receive the fund as an annuity rather than place it in trust. The short answer to this argument is that, if the defendant had fulfilled his obligations under paragraphs 5 (a) and 5 (b) rather than severing himself from the retirement fund, he would have received the annuity and the terms of paragraph 5 (c) as we read it would not have applied.

provisions of paragraphs 5 (a) and (b), thereby severing himself from the Morris Alper plan. As we read paragraph 5 (c), once the defendant severed himself from the plan, the funds belonged to his wife and children. Therefore, the plaintiff was entitled to receive the money under paragraph 5 (c) on the death of her mother. The judgment of the Probate Court is affirmed.

*So ordered.*